Our sixth case for this morning is Thomas v. National Education Association, South Bend, 14-1639. Mr. Grimes. Good morning. May it please the court. The primary issue in this case is the dismissal for lack of prosecution in the district court. Make sure to speak up, Mr. Grimes. Okay, thank you. Looking at the standard of review of the sanction of dismissal, this court has stated because of its severity, we have circumscribed the range of cases in which dismissal may be used as a sanction. Looking at the case law, we find two different standards for determining whether a case can properly be dismissed. Some of our cases have held that actions can be dismissed when there is a clear record of delay or contumous conduct or when other less drastic sanctions have proved unavailing. So the delays that seem to have attracted the district court's attention are two. One of them is the 10-month delay back in 2008. So maybe we forgive everything from 2005 up to that point in 2008, but it takes 10 months to file a complaint with the state agency. Then we can suspend the clock for a while. The state agency does its thing. And then there's another 11-month delay in 2013 coming back to the federal court. And it's actually the union that's really trying to get things resolved. And the district court says enough is enough. I mean, after a hearing, after discussions, it's not like this sort of came in out of the blue that you woke up one day and there was an order of dismissal for one of prosecution on the docket. Well, I think that we did. But you didn't. You were there at the hearing. I've read the transcript. Well, I'm not saying that I wasn't. I didn't interpret your question to mean that I wasn't present. I didn't interpret your question. Well, that's what I'm saying. I'm saying it's not like it just popped up in the docket when you were checking the docket. You were there. You had a chance to discuss it. Of course. Yes. And I don't disagree with that. And we did discuss it. First of all, the union didn't file the motion. The South Bend Community School Corporation filed the motion. They had been granted summary judgment some time ago. And the district court entered an order saying that at the time that the case, the union case, was transferred to the ERB, the court said the court granted unions a motion to stay plaintiff's claims against the union on April 15, 2008. The court granted SBC defendant's motion for summary judgment at the same time. Right. In the opinion, the court stated, it is further ordered by the court. It is further ordered that the court shall retain jurisdiction and this case shall be restored to the trial docket upon motion of a party if circumstances change so that it may proceed to final disposition. This order shall not prejudice the rights of the parties to this litigation. I think here is the part of the problem. We spent several years dealing with the administrative process, and I think the brief sets out the trajectory of all of it. And we're sitting there with this order saying that anybody can, at any particular point in time, come back and ask that it be restored to the trial docket. And that's what happens. The judge makes a comment, actually, in the course of it, saying, I said you could come back, and I guess that's what we're doing now. You know, he says that at page 13. Yes. The plaintiff has moved to restore the case to the docket by virtue of the fact that we're holding this argument. It seems to be back. And so I'll, so I'll hand, he essentially says, it's a request to reinstate, so I will grant that motion. Now the question is what to do. So I don't understand why we're talking about that. It happens just as the judge said it would. Well, I think it's important to the context of that particular order set the stage for what happened, because any party could have come back. But so what? I mean, there are these big delays, and there's this long period of time. And the judge is of the view that there really aren't any material facts about the union's case that are terribly different from the facts that drove its decision on the school district's case, which is what he says at the end of it. And so he winds up, instead of ordering more proceedings, he winds up just wrapping up the case. And he says, you know, there's just nothing that's gotten, there's these two big long periods of delay, 10 months and 11 months, 2008 and 2013. So why is that an abuse of his discretion? Because we were busy on the administrative process, because two years after the suit was filed. I'm not blaming you for the administrative process, nor is he. But there's a delay before you trigger it, then it happens, it's done, and then there's another lengthy delay after it's finished. Part of the first delay is after the state court made its decision, we then appeal that decision. Can you stop there for a second and tell me exactly when the state proceedings were concluded and what action was taken after that to pursue the federal claim? So that I have, you know. Well, after the state administrative process through appeal to the Indiana State Supreme Court. Which ended in December of 2012, correct? Right. Yes. Transfer was denied. Right. Right. And so. Then what happened? After that, then we ultimately got to the point where we sought or moved or responded to a request that as to where we go from here by the union. And we indicated, as the record shows, that the union's position was that you don't have a chance here. So why not just dismiss it? Our position was that we didn't believe that that to be the case. Okay, so then what did you do to pursue this federal claim and when? At that point, what we did was we filed a motion to restore the case to the docket. Wasn't that after the November motion to dismiss for lack of prosecution? Yes, but that motion was filed by the school system. The school system. But why does that matter? I mean, it's the timing of when you filed this motion that I think Judge Tinder was getting at. And I appreciate that. I think it matters because the school system was already out of the case. There was no judgment yet, though, correct? Well, I'm trying to recall. The dismissal had been ordered, but no judgment had been entered. No, the court had awarded summary judgment to the school system. But that's not a judgment in a Rule 58 sentence. There are many claims with multiple parties, and just resolving one party, unless there's a 54B order, doesn't do anything. That party is still in the case. They're not entitled to appeal. We would dismiss an appeal for want of jurisdiction. I don't disagree with that. I understand that. I'm just trying to show you the sequence and the reasons why we did what we did. Well, I think maybe it would be best if you saved the rest of your time for rebuttal. Then that way you'll be able to respond to whatever the union lawyer says. I'll be fine. Maybe the union can help me. Mr. Hilton. Thank you. May it please the Court, Eric Hilton on behalf of the National Education Association, South Bend. May I ask you this? Certainly. Can you identify in the record where I can find the second motion to dismiss for failure to prosecute by the union? And can you tell me when it was filed? Judge, we filed the first motion early on, back in 2007. The school corporation then filed a motion to dismiss for failure to prosecute. And I think even in the hearing in front of the district court judge, we said we kind of would piggyback on each other's motions. We did not actually file a written motion. But at the day of the argument dealing with the motion to reopen the case, we made an oral motion to the court to also dismiss the plaintiff's case against the association for failure to prosecute. So I could only find it if I looked at the transcripts? Correct, of the actual hearing, the trial court hearing. Okay. I can stop going insane. Okay. And I'll point out one thing to clarify for the court's benefit so you won't have to go back in the record. The trial court did actually, after these school corporations filed its motion to dismiss for failure to prosecute, they did, in fact, finalize their summary judgment motion. Yeah, they eventually got a 54. They did. Yeah, they eventually got the summary judgment motion. But the court went ahead and still had the case set for a motion to reopen the case to hear that consideration. We got to the hearing. Was the motion to reopen something, as you understood it, that encompassed both? I mean, it couldn't, actually. If there was a 54B in place, the school district has to have been out altogether. So the motion to reopen could have applied only to the union. That's correct, Judge. And the fact that they had, between the time the school corporation, with our thinking that the school corporation filed the motion to dismiss for failure to prosecute, that we would be going up for a hearing in the meantime. But that's bizarre. They filed that motion after the 54B? No, it was before. Before. They filed it for, and then the court went ahead and granted them summary judgment. So then they didn't have to go and prosecute the failure to prosecute motion. So you just sailed along with their motion, basically. We went to the motion to reopen the case, and at that hearing we specifically asked on the record that the court also grant a motion to dismiss on behalf of the association for failure to prosecute. Did the notice of that hearing indicate what was going to be heard at the February hearing? The motion was to reopen the case. That was what the motion was to be considered. So that's what the notice indicated? That's correct, Judge. But I think looking at the case, the fact that I know you pointed out the fact that there had been an earlier 10-month delay, there had subsequently, we spent probably five years in the state court proceedings because part of the claim against the association, Indiana Supreme Court, in the Freitas case, had decided that any duty of fair representation issue must be decided by the Education Employment Relations Board. It's not subject to federal law because it's a political subdivision. So we spent a number of years through that. But at the beginning, I agree with what the judge said, is that there was about a 10-month delay, and after that initial 10-month delay back in 2007, after the court granted our motion to stay, the association filed a motion to dismiss for failure to prosecute six or seven years ago. So I'm looking at page, this is attached to Ms. Thomas' brief, pages 5 and 6 of the February 21, 2014 hearing, and you're talking first because Mr. Grimes was late. And at the bottom of page 5, you're saying there's no way for plaintiffs to be able to make a case in this court, it's been nine years, and at the top of page 6, I see you saying, we're requesting that the motion be granted for failure, you're talking about the school corporation, for failure to prosecute and motion denied to reinstate, and then you go on. So that's what you're relying on, I take it, is your oral motion. Yes. Okay. Yes, and I think that you had addressed the two issues of the long amount of delay, but I think one thing that the judge, a district court judge really hung his hat on, was the fact that he had sent the one element of their case to be decided by a state court proceeding, and when it came back, one of the elements is that the association, or that the school corporation violated a collective bargaining agreement, that the association let the breach go unrepaired, thereby violating. This was all about the right of this other woman to the job. Yes, that's correct. Whether the association violated the suit of fair representation, that issue was addressed by the Indian Education Employment Relations Board, a trial court, the Indiana Court of Appeals, and then transfer was denied by the Indiana Supreme Court. So with the judge, I think he looked at all the different factors in the Casalo case, and there wasn't really any, a lot of them didn't really go one way or the other, but when he came down to see the merits of the case, I think his specific thing he said was, I struggle to find any merit to this case, and the judge specifically asked Mr. Grimes, what is it that you want to continue to proceed on in this case? And he said, all my claims. And the judge said, but one element of your claim has been decided when we stayed this case and sent it to the state courts, and now there's basically, he struggled to find any way that he could prevail on the merits of the case. So your view that Section 1738, the full faith and credit statute, is what the judge was really alluding to? I'm not sure exactly, Your Honor. I don't think there's any mention of that completely. There are, of course, reasons why you don't reopen facts that have been determined and necessarily decided in the state court. Yeah, and he did make mention as far as that he specifically sent that over there. That decision has been made. Mr. Grimes continued to make, the plaintiff continued to make arguments, saying they still wanted to have the federal court decide its duty of fair representation case, and early in the case, the judge had dismissed any federal claims for a duty of fair representation claim because it doesn't apply to political subdivisions. It's a state law that applies. But I think coming down to the end, the district court, I think the biggest thing was we have this 10-month delay, 11-month delay. We have a situation where once you get to the one factor that I think weighs heavily, the one factor that really has the biggest impact on the factors to consider for failure to prosecute is whether or not there was any merit. And again, the judge said he struggles to find any. And by having one element of their claim for race discrimination unable to be achieved in federal court, I think the judge properly dismissed the case based on our motion at that hearing for failure to prosecute. And I think it's an abusive discretion standard. In this case, I think the district court judge ruled correctly, and we would ask that you affirm that decision. All right. Thank you very much. Thank you. Anything further, Mr. Grimes? What time does he have? About a minute? Yeah. You have a minute. The case against the union was a hybrid claim. One part of it was race discrimination under Title VII, and the other was the fair representation claim. The IRB can only deal with the fair representation claim. The claim that remained was the Title VII claim of race discrimination against the union. So that was the issue that was there that remained, and that's the only thing that we want. That's why we asked the court to place it on the docket, because that issue and today that issue has not been resolved. And that's why we took the action that we did in asking the court to reopen. The court did. As you look at the transcript, the court did that. It granted our motion. Right. And then we look at the docket and we find that the court kind of changed things. After it granted our motion to reopen, it then entered judgment for the school system and then granted the union's motion, which the union had never filed a motion in this particular case. So that's the part that is confusing to me. I don't understand. Well, that seems to be very clearly discussed in the transcript of the hearing that you were at. I don't see how you could be surprised by it. No. There were two different entries. There was an entry from the day of the hearing. He explained. I'm sorry? He explained in the hearing here what his concerns were. And all of his concerns were addressed in terms of the frequency to comply with the district court rules, the effect or responsibility for mistakes of the judge's calendar, prejudice for the delay. We went through all of that. And the court didn't find any of the actions by the plaintiff to have caused any of those problems or met any of those that are listed under standard of review. Didn't find any. And so we leave one place, and then the next day we see in the judge's order that it's totally reversed. And so that's why we're here. And that's why we believe that the court was aired, because it never at any point entered a ruling or a judgment on the race discrimination claim under Title VII against the union. It never did. And we believe that the court had the jurisdiction to do that, but it didn't even discuss it. It didn't even issue or discuss why it did not decide that claim, and it was clearly before the court that that was the only reason why we had asked to reopen. All right. I think we have your point, Mr. Grimes, so thank you very much. Thanks to both counsel. We'll take the case under advisement.